IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| STEPHON ORLANDO NEWMONES, | ) | |
| | ) | |
| Plaintiff | ) | 1:21-CV-00276-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | CHIEF UNITED STATES |
| MS. RANSOM, PSYCH, INDIVIDUAL AND OFFICIAL CAPACITY, | ) | MAGISTRATE JUDGE |
| | ) | |
| | ) | MEMORANDUM OPINION ON |
| Defendant | ) | DEFENDANT RANSOM'S MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| | ) | ECF NO. 70 |
| | ) | |

Defendant Ransom has moved for summary judgment on Plaintiff's sole remaining claim against her. *See* ECF No. 70. The parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings, including the entry of final judgment. *See* 28 U.S.C. § 636(c). For the reasons discussed herein, Ransom's motion will be **GRANTED**.

I. Background

A. Procedural Background

Plaintiff Stephon Orlando Newmones ("Newmones"), an inmate in the custody of the Pennsylvania Department of Corrections at its State Correctional Institution at Albion ("SCI-Albion"), commenced this action against five individuals who were either employed or provided services at SCI-Albion: Ms. Ransom, a psychological Services Specialist ("PSS"), Dr. Gottesman, a prison psychiatrist, and three corrections officers. Newmones' Fourth Amended Complaint (ECF No. 15), his operative pleading, asserted Eighth Amendment claims pursuant to 42 U.S.C. §1983 based on allegations that the Defendants acted with deliberate indifference to

1

his mental health needs and subjected him to cruel and unusual conditions of confinement. *See* ECF No. 15. By prior order on Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court dismissed all claims except one Eighth Amendment conditions of confinement claim against Ransom.[1] *See* ECF No. 47 (Memorandum Opinion), 48 (Order). This surviving claim was based on Newmones's allegation that Ransom refused to provide him with the necessary cleaning materials after he smeared his own feces on the walls of his cell and may have had some role in his not receiving meals over a period of two and one-half days. *Id.*

On June 30, 2023, Ransom filed her pending motion for summary judgment (ECF No. 70), a supporting brief (ECF No. 71), and a concise statement of material facts (ECF No. 72), all in compliance with LCvR 56. On July 10, 2023, the Court entered an Order directing Newmones to file "a Memorandum or Brief in Opposition to the Motion, a Responsive Concise Statement of Material Facts, and an Appendix or exhibits to his…Responsive Concise Statement on or before August 7, 2023." ECF No. 74. The Court's Order included specific instructions regarding the filing and contents of a responsive concise statement of material facts and advised Newmones of the consequences of failing to file a concise statement, including that each "material fact set forth in the moving party's/parties' Concise Statement of Material Facts will for purposes of the motion for summary judgment be deemed admitted unless Plaintiff specifically denies or otherwise controverts it in his/her Responsive Concise Statement as required by Local Rule 56(C)(1)." *Id.*, ¶ 2. The Court's Order also included specific instructions regarding the requirements for presenting facts by affidavit, including that any affidavit "either been sworn to under oath (notarized) or which include immediately before the signature of the

---

[1] The Court dismissed Newmones' other claims without prejudice and with leave to file a further amended complaint, but Newmones elected not to amend. Accordingly, the Court entered a further order dismissing the other claims with prejudice. *See* ECF No. 50.

2

individual making the affidavit or declaration the following statement, in accordance with 28 U.S.C. § 1746: 'I declare under penalty of perjury that the foregoing is true and correct.'" *Id.*, ¶ 5. On August 10, 2023, Newmones filed a brief in opposition to Ransom's motion (ECF No. 75), but he did not file a responsive concise statement of material facts or supporting exhibits.[2] On January 4, 2024, the Court entered an Order directing Newmones to file a responsive concise statement **on or before January 25, 2024**," and again warning him that, "[s]hould he fail to do so, the Defendants' Concise Statement of Material Fact will be deemed admitted." *See* ECF No. 77 (emphasis in original). Despite the Court's latitude and warning, Newmones has never filed a responsive concise statement or explained his failure to do so. Accordingly, under LCvR 56(E), each fact stated in Ransom's concise statement of material facts is deemed admitted. However, because Newmones' Fourth Amended Complaint is verified, *see* ECF No. 15, pp. 4-5, the Court will treat that pleading as an affidavit and consider its factual statements, but only to the extent they are based on Newmones' personal knowledge and do not propose inferences unwarranted by the facts.[3] *See Jackson v. Armel*, 2020 WL 2104748, at *5 (W.D. Pa. May 1, 2020) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985)).

    B.    Material Facts

---

[2] Newmones' opposition brief contested certain factual statements in Ransom's Concise Statement of Material Facts. The contested statements were that he was issued cleaning supplies; that Ransom "offered materials to clean the cell in question;" and that Ransom advised him that "cleaning materials were available from RHU staff and would be provided ... at any time upon request." *See* ECF No. 75, pp. 2-3. Because Newmones did not support these denials with an affidavit or any other evidentiary material, the Court will not consider them.

[3] A verified complaint may be used as an opposing affidavit or declaration under Rule 56 if it is based on personal knowledge and sets forth specific facts admissible in evidence. *See, e.g., Mamuel v. Wiles*, 2023 WL 9499970, at *6 (W.D. Pa. Dec. 20, 2023); *Parkell v. Danberg*, 833 F.3d 313, 320 (3d Cir. 2016) ("[b]ecause [plaintiff's verified complaints] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit"). *See also Jackson v. Armel*, 2020 WL 2104748, at *5 (W.D. Pa. May 1, 2020) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985)) (treating verified complaint as an affidavit on summary judgment motion).

Newmones has been an inmate at SCI-Albion since February of 2020. ECF No. 72, ¶ 2. In April of 2021, he was placed in the Diversionary Treatment Unit ("DTU") because of a series of prior misconduct charges. *Id.*, ¶ 12. On May 4, 2021, Newmones was transferred from the DTU to the Special Needs Unit ("SNU"). *Id.*, ¶ 13. While housed in the SNU, he received another misconduct charge and, on May 11, 2021, he was sent back to the DTU. *Id.*, ¶ 14. That same day, Ransom met with Newmones "to explain the DTU process and to advise that there would be 'follow-ups' for seven days and that there was mental health support available on the unit." *Id.*, ¶ 15. She met with Newmones again on May 12 and May 13, 2021. *Id.*, ¶¶ 19, 21. Ransom did not note any issues of concern after either meeting. *Id.*, ¶ 21. However, on May 14, 2021, Ransom observed Newmones "yelling at his peers. He was screaming obscenities and racial slurs when [Ransom] attempted to gain his attention." *Id.*, ¶ 22. After observing continued verbal aggression, Ransom reported Newmones to the officer assigned to the Restricted Housing Unit ("RHU"). It was then determined that Newmones would be moved to that unit. *Id.*, ¶ 23. On May 16, 2021, a nurse referred Newmones for a mental health review, noting that the RHU staff reported that he was "taking feces and drawing on walls and paper." *Id.*, ¶ 26. Ransom met with Newmones again on May 17, 2021. *Id.*, ¶ 27. She observed feces on the window of Newmones' cell door and also on the interior wall. *Id.*, ¶ 28. When Ransom asked Newmones about that condition, he stated that he began cleaning his cell with what he believed to be "laundry detergent," but was, in fact, his own feces. *Id.*; *see also* ECF No. 15, p. 6. In her declaration, Ransom states that she offered Newmones "the means to clean the feces from his cell windows and walls but he consistently declined my offers." ECF No. 73-3, ¶ 46. Newmones denies this. ECF No. 75, p. 2; ECF No. 15, p. 6.

When she met with him again on May 18, 2021, Ransom observed feces on the window and walls and again asked Newmones about the condition of his cell. ECF No. 72, ¶ 31. Newmones told her that he was "gonna clean it up. I'm gonna clean it up if I can go back to DTU." ECF No. 72, ¶ 31. Again, Ransom offered him the means to clean his cell, stating that cleaning material were available from RHU staff and would have been provided to him upon request. ECF No. 73-3, ¶¶ 46-47. Newmones denies this. ECF No. 75, p. 2. Ransom met with Newmones again the following day (May 19, 2021). ECF No. 72, ¶ 32. Feces remained on the cell door window and walls. *Id.* When asked about the condition of his cell, Newmones told Ransom that he "tried to clean it up, but I don't have any supplies to clean it with." *Id.*, ¶ 33. He then indicated that he was not going to clean it up. *Id.* By this time, Newmones had refused his medication for three days. *Id.* Upon Ransom's inquiry, he reported no concerns with appetite, sleep, or suicidal thoughts. *Id.* Later that day, Newmones met with the Psychiatric Review Team ("PRT"), which reiterated the goal that Newmones clean his cell so that he can be moved to a different unit. *Id.*, ¶ 36. He also met with the Program Review Committee ("PRC") on May 19, 2021. *Id.*, ¶ 37. That committee concluded that Newmones' conduct, including the smearing of feces in his cell, was "behaviorally driven and not psychiatrically driven." *Id.*, ¶ 38.

When Ransom saw Newmones again on May 20, 2021, he was cleaning his cell. *Id.*, ¶ 43. Ransom noted "positive feedback" from Newmones, who told Ransom, "I started to clean my cell last night [May 19, 2021] and I want to be done by lunch time. ... I'm doing it, I ain't gonna be a problem anymore." *Id.*, ¶ 44. Newmones was moved back to the DTU the next day and was eventually moved off that unit. *Id.*, ¶ 50.

II.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under this standard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  While pro se litigants are

6

accorded some liberality in the interpretation of their pleadings, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion ..." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, *pro se* status does not relieve a non-moving party of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

III.   Discussion and Analysis

The Eighth Amendment's prohibition of cruel and unusual punishment imposes constitutional limitations on a prisoner's conditions of confinement. *See Rhondes v. Chapman*, 452 U.S. 337 (1981); *Graham v. Connor*, 490 U.S. 386 (1989); *Wilson V. Seiter*, 501 U.S. 294 (1991). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Gilblom v. Gillipsie*, 435 Fed. Appx. 165, 168 (3d Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). First, the plaintiff must demonstrate a deprivation that is "objectively, sufficiently serious." *Beers-Capitol*, 256 F.3d at 125 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (quotation marks and citations omitted). The objective component is narrowly defined: only "extreme deprivations" suffice to make out an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). These needs include "food, clothing, shelter, sanitation, medical care and personal safety." *Griffin v. Vaughn*, 112

F.3d 703, 709 (3d Cir.1997). "[A] totality of the circumstances test must be applied to determine whether the conditions of confinement constitute cruel and unusual punishment." *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990).

Second, the plaintiff must show that the prison official "subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "This subjective component is also narrowly construed." *Henry v. Overmyer*, 2013 WL 3177746, at *2 (W.D. Pa. June 24, 2013). A prison official's conduct violates the Eighth Amendment "only if he knows that the inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Farmer*, 511 U.S. at 847) (alterations in original). Thus, "'[t]o overcome a motion for summary judgment, a plaintiff [alleging deliberate indifference to conditions of confinement] must come forward with evidence from which it can be inferred that the defendant-officials were . . . knowingly and unreasonably disregarding an objectively intolerable risk of harm.'" *Zamichieli v. Pa. Dep't of Corrs.*, 2022 WL 777201, at *3 (3d Cir. Mar. 14, 2022) (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010)).

Newmones claims that the conditions of his cell in the RHU amounted to cruel and unusual punishment. He contends that for approximately two days he was deprived of food and subjected to unsanitary conditions after he smeared his own excrement on the walls and window of his cell.[4] ECF No. 15, p. 6. Ransom argues that the alleged deprivations were not sufficiently serious to establish a constitutional violation. *See* ECF No. 71, p. 6. The Court agrees. Whether

---

[4] The Court previously determined that the general conditions of the restricted housing unit and the alleged deprivation of cleaning supplies, a shower, and recreational privileges for two days were not sufficiently serious to state an Eighth Amendment claim. *See* ECF No. 47, p. 13 (citations omitted).

viewed separately or in combination, these conditions do not support that Newmones was deprived of the minimal civilized measure of life's necessities.

Newmones fails to point to any evidence in the record from which a jury could infer that the unsanitary conditions of his cell subjected him to a substantial risk of serious harm. Courts have held that "the fact that some inmates smear feces on the walls of their [own] cells does not, without more, give rise to an unconstitutional condition of confinement."[5] *Whitney v. Wetzel*, 2015 WL 4920071, at *8 (W.D. Pa. Aug. 12, 2015); *see also Ward v. Buchanan*, 2020 WL 7047820, at *2 (E.D. Wis. Dec. 1, 2020) (housing inmate in a cell where he had smeared his own feces on the wall does not violate the Eighth Amendment) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Indeed, courts have held that an inmate's exposure to urine or feces in a cell does not constitute a substantial risk of serious harm. *See Gilblom,* 435 Fed. Appx. at 169. (denying conditions of confinement claim when inmate spent approximately thirty-six hours in a cell with his own excrement); *see also Manson v. Vogt*, 2023 WL 8281687, at *3 (M.D. Pa. Nov. 30, 2023); *Young,* 2023 WL 8438810, at *9; *Sanchez v. Pirolli*, 2022 WL 2116830, at *8 (E.D. Pa. June 13, 2022). Although "likely unpleasant and ... unsanitary," such conditions do not rise to the level of an Eighth Amendment violation. *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020). Moreover, the duration of the conditions "cannot be ignored in deciding whether such confinement meets constitutional standards." *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhius v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000). Newmones does not dispute that he was subjected to this condition for a

---

[5] The fact that Newmones caused the condition of his cell "reduces the potency of any corresponding harm." *Smith v. Godinez*, 2023 WL 358792, at *6 (N.D. Ill. Jan. 23, 2023) (citing *Isby v. Clark*, 100 F.3d 502, 506 (7th Cir. 1996) ("[A]n inmate who causes filthy conditions to exist may not have a cruel and unusual leg to stand on.")). But here, Newmones has averred that he was experiencing hallucinations and believed he was cleaning his cell with laundry detergent. ECF No. 15, p. 6. For purposes of the pending motion, the Court will accept this assertion as true and not view his actions as willful.

relatively brief time—from May 17, 2021 until May 19, 2021, when he began to clean his cell. *See* ECF No. 15, p. 2. Exposure to unsanitary cell conditions for similar durations of time have been found not to present a substantial risk of serious harm. *See, e.g., Gilblom*, 435 Fed. Appx. at 169; *Edge v. Mahlman*, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021, *report and recommendation adopted*, 2022 WL 20113138 (S.D. Ohio Mar. 18, 2022) ("It is well-established that the presence of some unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme."); *Barney v. Pulsipher*, 143 F.3d 1299, 1311-12 (10th Cir. 1998) (noting that an eleven-day stay in unsanitary cell did not constitute Eighth Amendment violation because duration was relatively brief); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1988) (five day stay in "filthy, roach-infested cell" not unconstitutional); *Ogbolu v. McLemore*, 107 F.3d 21, *2 (10th Cir. 1997) (cold, wet, drafty, and unsanitary cell for two days does not violate Eighth Amendment)

Newmones also has not pointed to any evidence from which a jury could infer that he suffered any harm because of the feces in his cell. *See, e.g., Wilson v. Ellett*, 2016 WL 613824, at *3 (M.D. Pa. Feb. 16, 2016) (quoting *Benson v. Godinez*, 919 F. Supp. 285, 289 (N.D. Ill. 1996)) ("[W]hile the Eighth Amendment does not require plaintiff to become deathly ill before a constitutional violation will be found, 'the absence of any ailment other than colds or sore throats militates against characterizing the conditions in [plaintiff's] cell as objectively serious.'"). *See aslo Lindsey v. Shaffer*, 411 Fed. Appx. 466, 468 (3d Cir. 2011) (per curiam) (concluding that whether plaintiff suffered harm was critical to determination whether unsanitary conditions were

10

unconstitutional); *see also Fortune v. Hamberger*, 379 Fed. Appx 116, 122 (3d Cir. 2010) (per curiam) (concluding that denial for showers for fifteen days did not violate the Eighth Amendment when inmate did not "suffer[ ] any harm as a result of the denial of additional showers"); *Berry v. Sellers*, 2023 WL 2647089, at *6 (E.D. Pa. Mar. 27, 2023).

In his verified Fourth Amended Complaint, Newmones also alleges that he was denied food on May 17 and 18 and denied breakfast and lunch on May 19, 2021. ECF No. 15, p. 3. Although Newmones does not identify who denied him food or meals, he does allege that "Mrs. Ransom stated if I don't clean the feces I can't eat." *Id.*, p. 2. This assertion appears only in Newmones' pleading; his response to Ransom's motion for summary judgment includes no mention of any denial of food or meals. While he attributes a statement to Ransom regarding the denial of food, he does not offer any evidence to support that she was personally responsible for this denial. Newmones did not present any evidence in support of this aspect of the claim in response to Ransom's motion for summary judgment. As such, Newmones has failed to demonstrate a genuine issue of material fact concerning any denial of food or meals. *See, e.g., Harvey v. City of Phila.*, 253 F. Supp.2d 827, 831 (E.D. Pa. 2003) ("Without any specific supportive facts in the record, the plaintiff's bald assertions alone cannot overcome the defendants' motion for summary judgment."); *see also Celotex Corp.*, 477 U.S. at 324 (finding that the nonmoving party must "go beyond the pleadings and her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is genuine issue for trial.'").

Moreover, even if Newmones had produced evidentiary support that Ransom had denied him food or meals on the dates he listed in his Fourth Amended Complaint, Ransom would still be entitled to summary judgment on the claim. The Eighth Amendment is violated when

conditions of confinement—including the provision of adequate food— "alone or in combination … deprive inmates of the minimal civilized measures of life's necessities." *Bistrian v. Levi*, 696 F.3d 351, 367 (3d Cir. 2015); *Farmer*, 511 U.S. at 832. But "[c]ourts have stressed the duration of the exposure to the alleged unconstitutional conditions and the 'totality of the circumstances' as critical to a finding of cruel and inhumane treatment." *Lloyd v. Barr*, 2020 WL 5076065, at *3 (M.D. Pa. Aug. 27, 2020) (citations omitted). Therefore, "[w]hether the deprivation of food falls below [the constitutional] threshold depends on the duration of the deprivation." *Duran v. Merline*, 923 F. Supp.2d 702, 720 (D.N.J. 2013) (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

Here, Newmones' allegations that he was denied meals over the course of two or two and one-half days do not rise to the level of cruel and unusual punishment. *See, e.g., Brown v. Cool*, 2023 WL 8021013, at *8 (S.D. Ohio Nov. 20, 2023) (citing *Richmond v. Settles*, 450 Fed. Appx. 448, 456 (6th Cir. 2011) ([The] "withholding of meals, while it may result in some discomfort to the prisoner, does not result in a health risk to the prisoner sufficient to qualify it as a 'wanton infliction of pain'"). *See also Barnes v. Medva*, 2022 WL 4370797, at *10 (W.D. Pa. Aug. 2, 2022) (citing *Richmond*); *Zanders v. Ferko*, 439 Fed. Appx. 158 (3d Cir. 2011) (alleged deprivation of meals over two days fails to raise to the level of a constitutional violation even where prisoner was diabetic); *Young*, 2023 WL 8438810, at *9. Moreover, the record contains no evidence that Newmones suffered any ill health effects from the deprivation of meals. *See Lindsey v. Shaffer*, 411 Fed. Appx. 466, 468 (3d Cir. 2011) (per curiam) ("The critical issue for Eighth Amendment purposes is … whether the alleged [deprivation] has somehow harmed the prisoner."). Whether examined separately or in combination, the condition of Newmones' cell and the denial of meals do not satisfy the objective component of an Eighth Amendment claim.

IV. Conclusion

Newmones' failure to produce evidence sufficient to support a triable issue of fact concerning the objective prong of his Eighth Amendment claim entitles Ransom to judgment as a matter of law. *See Allah v. Ricci*, 532 Fed. Appx. 48, 50 (3d Cir. July 24, 2013) (affirming summary judgment for defendant and finding no need to address the subjective prong of Eighth Amendment analysis where the summary judgment record did not support the objective prong). Accordingly, Ransom's motion for summary judgment (ECF No. 70) will be GRANTED. An order of judgment will issue separately.

DATED this 14th day of February 2024.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE